The UNITED STATES of America

v.

HART, Orlando, Appellant.

No. 82–1069.

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1982.

Decided Nov. 19, 1982.

---

Richard A. Sprague, Jack L. Gruenstein (argued), Sprague & Rubenstone, Philadelphia, Pa., for petitioner.

Peter F. Vaira, U.S. Atty., Walter S. Batty, Jr., Elizabeth K. Ainslie (argued), Louis J. Ruch, Asst. U.S. Attys., Philadelphia, Pa., for respondent.

Before ALDISERT and HIGGINBOTHAM, Circuit Judges, and MEANOR,* District Judge.

---

* Honorable H. Curtis Meanor, United States District Court for the District of New Jersey, sitting by designation.

1. Because of the inordinate number of meritless objections pressed on appeal, spotting the one bona fide issue was like finding a needle in a haystack. One of our colleagues has recently cautioned on the danger of "loquaciousness":

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to *any* of them. I do not say that it is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of One Appellate Judge," *Capital University Law Review* 445, 458 (1982). Some of the objections Hart raised on appeal are:

1. The lower court committed error in refusing to permit Hart to present the testimony of Paul Osborne, which testimony would have established that James Davis, a key government witness testifying under a grant of immunity, committed perjury during his testimony at trial against Hart.

2. The lower court committed error in permitting the prosecution to use a chart containing facts not supported by the evidence and reflecting the prosecution's interpretation of the evidence; and further committed error in limiting Hart's cross-examination of the witness who prepared the chart.

3. The lower court committed error in permitting the prosecution to present the testimony of Augustine Doyle regarding an alleged crime committed by Hart where that testimony was unrelated to the scheme alleged in the indictment and constituted evidence of other crimes.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

We are asked in this case to review and set aside the conviction of appellant Orlando Hart on Counts One and Two of a thirteen-count indictment for mail fraud and a one-count indictment for conspiracy. The judgment on Count Two will be vacated and the appellant will be discharged on that count because the government failed as a matter of law to prove its case. We will affirm the district court on all other issues.[1]

---

4. The lower court erred in refusing to hold an evidentiary hearing on the issue of the involvement of the trial judge's son as a government attorney in the case.

5. The lower court committed error in denying Hart's motion for judgment of acquittal, pursuant to Fed.R.Crim.P. 29(c), on the grounds that the government failed to prove the mailings requisite to support Hart's conviction.

6. The lower court erred by instructing the jury that the submission of insurance claims, based on automobile accidents which defendants knew had never occurred, was a scheme to defraud within the mail fraud statute since such an instruction constituted a directed verdict of guilty as to a material element of the crime.

7. Hart's right to a fair trial was substantially prejudiced as a result of the prosecutor's improper closing argument, and further, as a result of the lower court's improper limitation of Hart's closing argument.

8. The lower court committed error in denying Hart's repeated requests for cautionary instructions where the failure to give such instructions resulted in substantial prejudice to his right to a fair trial; and the lower court erred further in admitting evidence against Hart which had not been linked to Hart and for which no proper foundation had been laid.

A. The lower court erred in permitting the government to read into evidence the prejudicial grand jury testimony of James Lawyer and William Tarr.

B. The court erred in refusing to give cautionary instructions limiting the admissibility of the documents related to Count 7, accident number 6, where Hart was not charged in that count.

C. The court erred in refusing to give a cautionary instruction prior to Sullivan's testimony concerning Dr. Wren's statements.

D. The lower court committed error in refusing to give a cautionary instruction prior to the admission of documents related to accident 10; in admitting documents related to accidents 13 and 18; and in admitting exhibits 8H–1M and 8H–2M, where those accidents were never linked to Hart.

### I.

On January 22, 1981, Orlando Hart and six other defendants were indicted by a federal grand jury. The indictment charged that from approximately February 1, 1976 to approximately October 1, 1977 the defendants engaged in a scheme to defraud certain insurance companies of money by submitting compensation claims for fictitious automobile accidents, that is, for automobile accidents that in fact did not occur.

At trial, the government introduced evidence of twenty fictitious automobile accidents that had served as the basis of the insurance claims. The government's proof that the accidents were fictitious consisted primarily of evidence that the same cars with the same damage were repeatedly presented by claimants using the same names or aliases with the same addresses.

On May 6, 1981, the jury found Hart guilty of the first two counts of mail fraud while finding him not guilty of conspiracy (Count Fourteen) and of five other counts of mail fraud (Counts Three, Five, Eight, Nine and Thirteen).[2]

Hart's post-trial motions were denied, and he was sentenced to two consecutive five-year terms of imprisonment, which sentences were consecutive to a prior sentence of imprisonment imposed by the Honorable James T. Giles in the matter of *United States of America v. Hart,* Criminal No.

80–00380.[3] Hart then timely filed this Notice of Appeal.

### II.

Hart complains that the evidence presented by the government was insufficient to prove Count Two which charges that:

On or about December 21, 1976, in the Eastern District of Pennsylvania and in connection with an alleged accident of September 27, 1976 involving the 1973 Ford Stationwagon [sic], the defendant ORLANDO HART, for the purpose of executing the scheme to defraud and attempting to do so, knowingly and willfully caused to be placed in an authorized depository for mail matter and delivered by the Postal Service mail matter containing a Geico personal injury claim form in the name of James Davis.

In violation of Title 18, United States Code, Section 1341.[4]

The jury found Hart guilty of this charge.

An appeals court is reluctant to set aside a jury's verdict because in our judicial process the determination of questions of fact and of guilt and innocence is the particular function assigned to the jury.[5] A court of review may intrude upon the jury's special preserve only if the evidence upon which the jury based its decision is clearly insufficient to support it.[6] The case before us is such a case. The government failed to prove Count Two because it offered no evi-

E. The lower court committed error in admitting evidence related to accidents 3, 7, and 14, where those accidents were not linked to Hart.

F. The lower court committed error in admitting into evidence documents for which no proper foundations had been laid.

G. The admission of co-conspirators [sic] statements against Hart, where Hart was not convicted of conspiracy, was prejudicial and requires that he be granted a new trial. Appellant's Brief at i–iv.

2. The jury also found Hart's co-defendant, William Stancill, guilty on two counts of mail fraud, not guilty of four other counts of mail fraud and not guilty of conspiracy. Two defendants were charged with one count of conspiracy to commit mail fraud (Frank Holland and Earl Stewart); they, and another defendant who was charged with one count of aiding and

abetting (Walter Wrenn), were each acquitted. Two other defendants (Jimmie Harrison and Raymond Payton) had previously pled guilty and testified for the government at trial.

3. Appendix, Vol. 1 at 0224. The judgment and sentence of the earlier case is currently on appeal before this Court under the caption *United States of America v. Orlando Hart,* No. 82–1019.

4. Appendix, Vol. 1 at 0–12.

5. *U.S. v. Boyd,* 566 F.2d 929, 937 (5th Cir.1978); *U.S. v. Castenada,* 555 F.2d 605, 611 (7th Cir. 1977).

6. *See, Burks v. U.S.,* 437 U.S. 1, 17–18, 98 S.Ct. 2141, 2150–2151, 57 L.Ed.2d 1 (1978).

dence to establish that a mailing had in fact occurred.[7]

Evidence admitted at trial identified two documents to which the "personal injury claim form" possibly refers. One document is entitled "Wage and Salary Verification" (Exh. 2(j)(1)) and the other is entitled "Application for Benefits—Personal Injury Protection" (Exh. 2(j)(2)). Of the two, the application for personal benefits (Exh. 2(j)(2)) would appear to be the claim form contemplated by the indictment, since it is more obviously the kind of document usually understood as a personal injury claim form. However, *no evidence was presented to show this form had been mailed.* Indeed, the government conceded as much and, in its response to Hart's post-trial motion, specified the Wage and Salary Verification (Exh. 2(j)(1)) as the document contemplated by Count Two.[8]

The government's "proof" that the Wage and Salary Verification was mailed is contained in the testimony of Marshall H. Frick, a GEICO claims representative. When Frick was asked to explain the Wage and Salary Verification (Exh. 2(j)(1)) and the Application For Benefits—Personal Injury Protection (Exh. 2(j)(2)), he testified:

> 2–J–1 is a form that GEICO *sends* to the employer to verify salary and wage loss information. 2–J–2 is an application for benefits under the Pennsylvania No-Fault Act.[9] (Emphasis added.)

The government contends that it was permissible for the jury to infer from Frick's assertion that "GEICO *sends*" the Wage and Salary Verification to employers that Hart caused to be *mailed* "a Geico personal injury claim form in the name of James Davis" as charged.

We disagree for the following reasons. The generic concept encompassed in "sends" may, though does not necessarily, include the specific mode of transmission denoted by "mail." The document could have been "sent" without having been "mailed." For example, a personal messenger or courier could have been employed in sending the document. Indeed, the record in this case establishes, and the government concedes, that when the claim form was completed in the name of James Davis it was not mailed; rather, it was hand-delivered.[10] When the government charges a defendant with mail fraud, it must at a minimum clearly and explicitly prove that the mailing occurred. We conclude that Frick's statement that GEICO "sends" documents is too ambiguous to meet the government's burden of proving that the claim form was mailed as charged in Count Two.

We conclude, therefore, that the government failed to prove the mailing charged in Count Two of the indictment. For this reason, the judgment of conviction on Count Two will be vacated. The judgment of conviction on Count One will be affirmed.

---

7. The court is aware of appellant's other argument that the document that was allegedly mailed was not the document referred to in the indictment, and that, therefore, there was a fatal variance between the charge in the indictment and the proof at trial. However, the Court does not have to reach a decision on this issue.

8. Appendix, Vol. 1 at 0–171—0–172. The government argued:

> From accusing the government of having proven too many mailings under Count One, Hart turns and says that the government proved none under Count Two. Hart does this by arguing solely with respect to Exhibit 2(j)(2), ignoring the evidence that Exhibit 2(j)(1), a personal injury claim form, was sent in blank by GEICO (N.T. 2–135); although the government failed to elicit testimony that it was mailed on or about December 21, 1976, the *completed* form in support of James Davis's claim was dated January 18, 1977, and was hand-delivered (N.T. 2–137 —2–138), so there can have been no confusion as to which document or which mailing was referred to.

9. Appendix, Vol. 2, at 2–135—2–136.

10. *See, Id.* at 2–137—2–138 and footnote 8, *supra*.