J-A22045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF HENRY STEPHENS, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: RICHARD C. STEPHENS | No. 2939 EDA 2016 |

Appeal from the Order Entered August 11, 2016
in the Court of Common Pleas of Delaware County
Orphans' Court at No.: 575 of 2013

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 30, 2017**

Appellant, Richard C. Stephens, appeals from the August 11, 2016 order, denying his petition for appeal from the register of wills, in which he sought to invalidate the last will and testament of the decedent, Henry Stephens, who was Appellant's father. For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the orphans' court's August 11, 2016 opinion and our independent review of the certified record.

> Henry Stephens married his [fourth] wife, [Appellee, Betty Stephens], on January 17, 1998. Henry Stephens executed his

_____

* Retired Senior Judge assigned to the Superior Court.

[l]ast [w]ill and [t]estament on June 9, 2010. By the terms of the [w]ill, [Appellee] is the sole beneficiary of Henry Stephens's [e]state if she survives him by thirty [] days and is also named [e]xecutrix of the [e]state. The [w]ill specifically mentions each piece of real estate owned by Henry Stephens but, most pertinent to this matter, specifically mentions two [] pieces of real estate located at 821 South 57th Street, Philadelphia, [Pennsylvania] (hereinafter referred to as the South 57th Street Property) and 28 North Lindenwood Street, Philadelphia, [Pennsylvania] (hereinafter referred to as the North Lindenwood Street Property).

Henry Stephens died on August 12, 2015[,] and [Appellee] was granted [l]etters [t]estamentary on January 26, 2016. Prior to the [l]etters being granted, [Appellant] filed an informal caveat to block the probate of the purported [l]ast [w]ill and [t]estament. [Appellant] then petitioned the [r]egister of [w]ills to extend the time for filing his formal caveat by seven [] days but that [p]etition was denied by [d]ecree dated December 14, 2015. After discussions with [Appellee and her] counsel, [Appellant] withdrew his caveats by letter dated January 22, 2016. As a result, the [r]egister of [w]ills entered an [o]rder on January 26, 2016[,] admitting the [l]ast [w]ill and [t]estament dated June 9, 2010[,] to probate. [Appellant's] appeal from probate followed on February 23, 2016.

In [Appellant's] [p]etition for [a]ppeal from [r]egister of [w]ills, [his] primary argument is that two [] properties listed in the [w]ill—the South 57th Street Property and the North Lindenwood Street Property—should not be included in Henry Stephens's [l]ast [w]ill and [t]estament because those properties were owned by [Appellant] and his brother, Henry Stephens, Jr. [Appellant] argues, in the [p]etition, that Henry Stephens forged the deed to the South 57th Street Property to obtain title in his name rather than his son's name, Henry Stephens, Jr. [Appellant] argues that this alleged fraud took place in 1990. [Appellant] further argues that Henry Stephens, by including these two [] properties in his [w]ill, stands to invalidate the [w]ill because it demonstrates that the [d]ecedent was being unduly influenced by [Appellee] to include the properties in the [w]ill. Nevertheless, [Appellant] also argues that including the properties in the [w]ill evidences lack of testamentary capacity.

At the beginning of the trial on the [Appellant's] [p]etition, counsel for [Appellee] stipulated that the North Lindenwood Street

Property was incorrectly included in the [w]ill. As to the remainder of his case, [Appellant] submitted forty-five [] exhibits all of which were admitted into evidence, called no witnesses, and made argument. Many of the exhibits submitted into evidence were documents that were already in the file and of record.

(Orphans' Court Opinion, 8/11/16, at 1-2).

On August 11, 2016, the orphans' court denied the petition for appeal. On August 22, 2016, Appellant filed a post-trial motion. The court denied the motion on September 6, 2016. The instant, timely appeal followed. The orphans' court did not require Appellant to file a concise statement of errors complained of on appeal and did not issue any additional opinion. *See* Pa.R.A.P. 1925.

On appeal, Appellant raises the following nineteen questions for our review.[1]

_____

[1] We express our disapproval that Appellant raised nineteen issues in his statement of the questions involved. While this Court understands that Appellant believes that the trial court made numerous errors,

> . . . we note that it has been held that when an appellant raises an extraordinary number of issues on appeal, as in this case, a presumption arises that there is no merit to them. In ***United States v. Hart***, 693 F.2d 286, 287 n.1 (3rd Cir. 1982), the court had an opportunity to address this situation:
>
>> Because of the inordinate number of meritless objections pressed on appeal, spotting the one *bona fide* issue was like finding a needle in a haystack. One of our colleagues has recently cautioned on the danger of "loquaciousness:"

- 3 -

1. Did the [c]ourt err in presenting a [c]ourt [opinion]: that was written by those that were [not] at the [t]rial, or did not review all the pleadings to include [p]reliminary [o]bjections and [a]nswers to [p]reliminary [o]bjections, and did not review the [t]ranscripts, or listen to the [c]ourt [a]udio and is it a violation of [l]aw and [d]ue [p]rocess to formulate an opinion/decision without such [c]ourt participation or review?

2. Did the [c]ourt err in not acknowledging and considering the fact that [Appellee] was the fourth [] wife, [twenty] years junior to the [d]ecedent and not the "second wife" as stated in the [c]ourt opinion and that the [d]ecedent was [seventy-nine] years of age and had been suffering from Dementia/Alzheimer's and dependent on [] Appellee for everything thus undermining [] Appellant's argument of [u]ndue [i]nfluence and which in general detracted from invalidating the [w]ill?

3. Did the [c]ourt err by not acknowledging and considering the undisputed facts that four [] of the six [] properties were

_____

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of One Appellate Judge, 11 Cap.U.L.Rev. 445, 458 (1982).

*Estate of Lakatosh*, 656 A.2d 1378, 1380 n.1 (Pa. Super. 1995).

liquidated by the [t]estator to include the [m]ain residence, since 1965, at 305 Buck Lane, Haverford that sold for $305,000 in which all proceeds went to the Appellee's benefit and thus by the [decedent's] [e]xplicit [a]ctions fulfilled his desired obligation and responsibility thus invalidated the purpose of the [w]ill and returning the last two properties that were his [s]ons['] back to his [s]ons?

4. Did the court err in not acknowledging and considering or addressing [] Appellant's specific criteria arguments of [u]ndue [i]nfluence and [l]ack of [t]estamentary [c]apacity?

5. Did the court err in not acknowledging or considering the *devisavit vel non exception* and thus prevented considering critical testimony and evidence?

6. Did the court err in not acknowledging and considering the handwriting signatures taken from the two [] notarized recorded [p]ublic [r]ecord [d]eeds, the seven [] signatures in the [s]worn [s]tatement of [f]acts, the five [] signatures in the [c]ontested [w]ill and the signature in the [f]orged [d]eed which clearly, beyond any reasonable doubt, shows the signatures are distinctly different and when the [decedent's] signature made no attempt to copy or mimic his [s]on's [s]ignature?

7. Did the court err in not acknowledging and considering the truthful Haverford Township [i]ncident [r]eports that were results of the conduct of [r]egular [p]olice [b]usiness in which the [o]fficer stated 'No Opinion' or made 'No Interpretations' or made 'No Speculation' however listened, observed and recorded the [p]ublic [r]ecords of Appellee's issues/needs for assistance and the [decedent's] issues/needs for assistance that support existing facts?

8. Did the court err and was it prejudicial abuse of discretion, fact and law in stating that [] Appellant admitted to fraudulent actions in regards to an action in [q]uiet [t]itle?

9. Did the court err in not conducting a [d]ue [d]iligence [i]nquiry into why the [m]istake was made to include the 28 N[.] Lindenwood [Street] property in the [d]efective [w]ill and dismissing the [m]istake because the "[m]istake" was acknowledged and unchallenged by [] Appellee?

- 5 -

10. Did the [c]ourt err in not considering the original or authentic deed dated March 4, 1977 to 821 S[.] 57th Street that was in the name of Henry Stephens, Jr. and that for absolutely no known reasons, except for perhaps Appellee's [u]ndue [i]nfluence or the [decedent] was having difficulty managing the property *i.e.* collecting the rental income and because the [decedent] was not the [o]wner of the property could not get in eviction therefore transferred title unnaturally by forging the deed from [s]on to [decedent] October 18, 1990 which the [decedent] believed he corrected by invalidating the [w]ill by his [e]xplicit [a]ctions of liquidating all the properties except his [s]on[']s last two?

11. Did the [c]ourt err in not considering that the first property of those listed in the [w]ill was sold within [fifty-eight] days of signing the [w]ill thus calling into question, [d]id the [decedent] know what he wanted to do with his property at the signing of the [w]ill? Additionally[,] did the [c]ourt err in not considering the [m]istake evidence of [l]ack of [t]estamentary [c]apacity?

12. Did the [c]ourt err in not acknowledging and considering the fact that these properties were not inherited but were payment as a result of working in the [f]amily [g]rocery [s]tore all the Appellant's youth?

13. Did the [c]ourt err in overruling all the [Appellee's forty-two p]reliminary [o]bjections first pass giving consideration to the Appellant's [a]nswers to [] Appellee's [p]reliminary [o]bjections yet sustaining the same objection in the [c]ourt [o]pinion?

14. Did the [c]ourt err in not considering the fact that the [i]nformal and [f]ormal [c]aveats were withdrew (sic) as a result of [m]alicious [a]buse of [p]rocess (extortion) whereby the only way to retrieve sentimental personal property ([m]other's [s]elf-[p]ortrait 1970, other art [and] firearms from Haverford Township Police) not listed in the [l]etters [t]estamentary was to withdraw the [c]aveats?

15. Did the [c]ourt err in not considering the facts that the delinquencies of: [p]roperty [t]axes, [w]ater and [r]efuse [c]ollection started in 2012 and that in on October 10, 2012 Appellee reported to the Haverford Township Police Department the deeds to properties listed in the [w]ill were missing and these delinquencies totals (sic) nearly $20,000 owed to the City of

Philadelphia and that the two properties were slated for [s]heriff's [s]ale and that these deeds clearly showed the properties did not belong to the [decedent] as one deed was forged and the other property was in [m]other's name as [t]rustee for [s]ons?

16. Did the [c]ourt err in not considering the fact that [] Appellant's [m]other purchased all these properties before her death September 5, 1978?

17. Did the [c]ourt err in not revoking the [r]eal [p]roperty [p]ortion of the [d]efective [w]ill?

18. Did the [c]ourt err in not verifying that [] Appellee contact [issues] in the [a]djudication of [i]ncapacitation of the [decedent] or get permission before entering an agreement to [s]ells (sic) 305 Buck Lane or get [b]onded for the sale, or not reviewing the [g]uardian's [i]nventory or the [g]uardian's [a]nnual [r]eports and all the order and conditions required by law to be in compliance with Pennsylvania [l]aws for [g]uardianship?

19. Did the [c]ourt err in law by knowingly admitting to [p]robate a [f]alsified [p]etition for [p]robate and did the court err in law by holding a [t]rial on such known falsified [p]etition rendering an [opinion] in support of such collusion[?]

(Appellant's Brief, at 8-11) (record citations and argument omitted).

Appellant appeals from the decision of the orphans' court denying his petition to invalidate the will. Our standard of review is settled.

When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

- 7 -

*In re: Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014) (citation omitted). Moreover,

> [a]s an appellate court we can modify an [o]rphans' [c]ourt decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*In re: Estate of Devoe*, 74 A.3d 264, 267 (Pa. Super. 2013) (citation omitted).

In the instant matter, our review of Appellant's brief reveals an utter failure to abide by the Pennsylvania Rules of Appellate Procedure. Pennsylvania Rule of Appellate Procedure 2101 states:

> Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.

Pa.R.A.P. 2101.

We also note Pennsylvania Rule of Appellate Procedure 2111, which states:

> **(a) General rule.**—The brief of the appellant, except as otherwise prescribed by these rules, shall consist of the following matters, separately and distinctly entitled and in the following order:
>
> (1) Statement of jurisdiction.
>
> (2) Order or other determination in question.

(3) Statement of both the scope of review and the standard of review.

(4) Statement of the questions involved.

(5) Statement of the case.

(6) Summary of argument.

(7) Statement of the reasons to allow an appeal to challenge the discretionary aspects of a sentence, if applicable.

(8) Argument for appellant.

(9) A short conclusion stating the precise relief sought.

(10) The opinions and pleadings specified in Subdivisions (b) and (c) of this rule.

(11) In the Superior Court, a copy of the statement of errors complained of on appeal, filed with the trial court pursuant to Rule 1925(b), or an averment that no order requiring a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) was entered.

Pa.R.A.P. 2111(a).

Further, Pennsylvania Rule of Appellate Procedure 2119 provides:

**(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

**(b) Citations of authorities.** Citations of authorities in briefs shall be in accordance with Pa.R.A.P. 126 governing citations of authorities.

**(c) Reference to record.** If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the

place in the record where the matter referred to appears (*see* Pa.R.A.P. 2132).

**(d) Synopsis of evidence.** When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found.

**(e) Statement of place of raising or preservation of issues.** Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.

\* \* \*

Pa.R.A.P. 2119(a)-(e).

In this case, Appellant has failed to comply with the mandates of Rules 2101, 2111 and 2119. While Appellant's brief includes statements of jurisdiction and of the standard and scope of review, they are not proper. (**See** Appellant's Brief, at 1-5). Throughout the brief, Appellant randomly inserts various photo copies of documents and/or portions of documents without identifying where they can be found in the certified record. (**See id.** at 16, 25, 33-35, 43, 46-47). Appellant's statement of the case is argumentative, discursive and not in compliance with Pennsylvania Rule of Appellate Procedure 2117. (**See id.** at 11-22); **see also** Pa.R.A.P. 2117. The summary of argument does not conform with either Appellant's statement of the questions involved or his argument section and Appellant's brief does not comply with Pennsylvania Rule of Appellate Procedure 2118. (**See id.** at 23-

28). Most importantly, Appellant's argument does not comply with Pennsylvania Rule of Appellate Procedure 2119(a) because it is all but incomprehensible, contains minimal citations to relevant legal authority, and Appellant fails to explain how the bare citations apply to facts in the instant matter. (*See id.* at 28-47). Lastly, Appellant's brief exceeds the page limitation contained in Pennsylvania Rule of Appellate Procedure 2135(a)(1), and does not include a certificate of compliance with the word count limit. (*See id.* at 1-47).

We have stated, "[w]hen issues are not properly raised and developed in briefs, and when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." *Commonwealth v. Sanford*, 445 A.2d 149, 150 (Pa. Super. 1982) (citations omitted). Further, the fact that Appellant is proceeding *pro se* does not absolve him of compliance with the Rules of Appellate Procedure.

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding, must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*Wilkins v. Marsico*, 903 A.2d 1281, 1284-85 (Pa. Super. 2006), *appeal denied*, 918 A.2d 747 (Pa. 2007) (citations omitted).

Here, the defects in Appellant's brief are significant and substantially encumber our appellate review. Accordingly, because Appellant's brief is defective to the point that it constitutes a violation of Pa.R.A.P. 2101, we

dismiss the appeal and therefore affirm the decision of the orphans' court.[2]

*See Branch Banking and Trust v. Gesiorski*, 904 A.2d 939, 942 (Pa. Super. 2006) (quashing *pro se* appeal where appellants "ignored the Pennsylvania Rules of Appellate Procedure . . . [rendering this Court] unable to conduct a meaningful review."); *Sanford, supra* at 150; *see also* Pa.R.A.P. 2101. Accordingly, we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2017

---

[2] Moreover, we have thoroughly reviewed the orphans' court opinion, the briefs of both parties, and the certified record and we discern neither an abuse of discretion nor an error of law in the court's decision, which correctly disposes of Appellant's claims of mistake, forgery, fraud, lack of testamentary capacity, and undue influence. (*See* Orphans' Ct. Op., at 3-5). Thus, even if were to address the merits of Appellant's claims, we would have no basis to overturn the orphans' court's decision. *See Fuller*, *supra* at 333; *Devoe*, *supra* at 267.